L. F. SINGLETON v. THE STATE.

No. 5596. Decided December 10, 1919.

1.—Murder—Self-defense—Charge of Court—Standpoint of Defendant—Rule
    Stated.

It is a fundamental proposition in self-defense that the killing must be
viewed from the standpoint of the defendant, as understood by him at the

26—86—T. C. R.

time he acted, and it is not what the jury may think of the danger viewed in the light of subsequent events or even at the time, and where upon trial of murder and a conviction of manslaughter the charge of the court ignored this cardinal principle the same was reversible error. Following: Bennett v. State, 80 Texas Crim. Rep., 652, 194 S. W. Rep., 148, and other cases.

### 2.—Same—Rule Stated—Self-defense.

It is the belief of the defendant as to the existence of facts and not the truth of facts, that should be submitted to the jury in a charge on self-defense. Following: Arthur v. State, 46 Texas Crim. Rep., 479, and other cases.

### 3.—Same—Self-defense—Charge of Court—Standpoint of Defendant.

If at the time defendant fired the fatal shot, it reasonably appeared to him from the circumstances of the case viewed from his standpoint, that the deceased was about to kill him or inflict serious bodily injury, he was justified in killing the deceased, although in fact the jury might believe from the evidence that he was in no danger at the time of being killed or injured by deceased. Following: Johnson v. State, 63 Texas Crim. Rep., 50, and other cases.

### 4.—Same—Real and Apparent Danger—Self-defense—Charge of Court.

Whether the danger is real or apparent is to be determined from defendant's standpoint, and a charge of the court on self-defense is erroneous if it fails to present the issue of self-defense from the standpoint of defendant, and requires the jury to find that the danger in fact existed. Following: Jordon v. State, 11 Texas Crim. App., 449, and other cases.

Appeal from the District Court of El Paso. Tried below before the Hon. W. D. Howe, judge.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Breedlove Smith* and *Jackson & Isaacks,* for appellant.—On question of defendant's standpoint: Standfield v. State, 208 S. W. Rep., 532, and cases cited in the opinion.

*Alvin M. Owsley,* Assistant Attorney General, for the State.— On question of charge on self-defense: Williford v. State, 42 S. W. Rep., 972; Puryear v. State, 56 Texas Crim. Rep., 231, 118 S. W. Rep., 1042; Ringo v. State, 54 Texas Crim. Rep., 561, 114 S. W. Rep., 119; Newcomb v. State, 95 S. W. Rep., 1048; Barlow v. State, 206 S. W. Rep., 198; James v. State, 206 S. W. Rep., 515.

DAVIDSON, Presiding Judge.—Appellant was convicted of manslaughter and awarded five years in the penitentiary.

The question presented for revision is the exceptions to the court's charge on self-defense and refusal to give special requested instructions on the same subject. In paragraph 11 of the charge the

court gave an abstract definition of self-defense. Section 12 of the court's charge undertakes to submit that issue. The court therein instructed the jury that if they believed defendant killed deceased, but further believed at the time of so doing the deceased had made, or was about to make, an attack on him, or that it reasonably appeared to the defendant that deceased had made or was about to make an attack upon him which from the manner and character of it and the relative strength of the parties, and the defendant's knowledge of the character and the disposition of the deceased caused him to have a reasonable fear or expectation of death or serious bodily injury, and that acting under such reasonable expectation or fear the defendant killed the deceased, or if they had a reasonable doubt thereof, then they will acquit the defendant. Then follows the presumption from the use of a deadly weapon. The exception was based upon the fact that it did not inform the jury that in passing on the defendant's right of self-defense they must view the matter from the standpoint of the defendant at the time. To meet this defect in the charge appellant requested the following:

"If at the time of the killing the conduct of the deceased, viewed in the light of all the circumstances, was such as to create in the mind of the defendant a reasonable apprehension of death or some serious bodily injury, although in fact no such danger existed, the defendant's right to kill the deceased or to prevent the apparent injury would be as complete as if the danger was real, and the appearances of indications of danger must be viewed and considered from the defendant's standpoint in determining whether or not they were reasonably calculated to produce and did produce in his mind the fear of death or some serious bodily harm."

It is a fundamental proposition in self-defense that the killing must be viewed from the standpoint of the defendant, as understood by him at the time he acted. The standpoint of defendant in self-defense is the essential and pivotal point of the doctrine of that phase of the law. The accused is not tried from the standpoint of the other side. It is not what the jury may think of the danger viewed in the light of subsequent events, or even at the time. It is what defendant thought and believed and which prompted his action. Any charge on self-defense of real or apparent danger that omits from the charge this theory of the law overlooks the fundamental proposition controlling and upon which it is based. See Bennett v. State, 80 Texas Crim. Rep., 652, 194 S. W. Rep., 148; Hays v. State, 82 Texas Crim. Rep., 427, Alsup v. Sate 85 Texas Crim. Rep., 36, 210 S. W. Rep., 195; Stubbs v. State, 81 Texas Crim. Rep., 75; Lee v. State, 67 Texas Crim. Rep., 137, 148 S. W. Rep., 706; Welborn v. State, 78 Texas Crim. Rep., 45, 179 S. W. Rep., 1179; Holmes v. State, 69 Texas Crim. Rep., 588, 155 S. W. Rep., 205; Hudson v. State, 59 Texas Crim. Rep., 650, 129 S. W. Rep., 1125; Lundy v. State, 59 Texas Crim. Rep., 131, 127 S. W. Rep., 1032; Best v.

State, 58 Texas Crim. Rep., 327, 125 S. W. Rep., 909; Standfield v. State, 84 Texas Crim. Rep., 437, 208 S. W. Rep., 532. See Branch's Ann. P. C., pp. 1074, 1075, 1077. Mr. Branch lays down this proposition:

"A charge on apparent danger is erroneous if it authorizes the jury to determine whether there was a reasonable appearance of danger. The theory of apparent danger should be submitted from the standpoint of the defendant," citing Jordan v. State, 11 Texas Crim. App., 449; Adams v. State, 47 Texas Crim. Rep., 347, 84 S. W. Rep., 231; Swain v. State, 48 Texas. Crim. Rep., 103, 86 S. W. Rep., 335; Lyons v. State, 71 Texas Crim. Rep., 189, 159 S. W. Rep., 1072.

Again he says: "It is the belief of defendant as to the existence of facts, and not the truth of the facts, that should be submitted to the jury," citing Arthur v. State, 46 Texas Crim. Rep., 479, 80 S. W., 1017; Stacy v. State, 48 Texas Crim. Rep., 95, 86 S. W. Rep., 327; Swain v. State, 48 Texas Crim. Rep., 98; Puryear v. State, 50 Texas Crim. Rep., 464; Winn v. State, 54 Texas Crim. Rep., 538; Williams v. State, 61 Texas Crim. Rep., 356, 136 S. W. Rep., 771; Maclin v. State, 65 Texas Crim. Rep., 384, 144 S. W. Rep., 951; Black v. State, 65 Texas Crim. Rep., 336, 145 S. W. Rep., 944; Bussey v. State, 69 Texas Crim. Rep., 98, 153 S. W. Rep., 874; Lyons v. State, 71 Texas Crim. Rep., 189, 159 S. W. Rep., 1072.

If at the time defendant fired the fatal shot, it reasonably appeared to him from the circumstances of the case, viewed from his standpoint, that the deceased was about to kill him or inflict serious bodily injury upon him, he was justified in killing the deceased, although in fact the jury might believe from the evidence that he was in no danger at the time of being killed or injured by deceased. Jones v. State, 17 Texas Crim. App., 612; Gonzales v. State, 28 Texas Crim. App., 135; Nalley v. State, 28 Texas Crim. App., 391, 13 S. W. Rep., 670; Reed v. State, 32 Texas Crim. Rep., 25, 22 S. W. Rep., 22; Swain v. State, 48 Texas Crim. Rep., 98; Johnson v. State, 63 Texas Crim. Rep., 50, 138 S. W. Rep., 1024.

Again Mr. Branch states this rule: "If it reasonably appeared to the defendant from the circumstances of the case, viewed from his standpoint at the time, that the danger existed, and he acted under the reasonable belief that it did exist, he was justified in defending against it to the same extent and under the same rules permitted in case the danger had been real." Jones v. State, 17 Texas Crim. App., 612; Tillery v. State, 24 Texas Crim. App., 272, Meuly v. State, 26 Texas Crim. App., 305; Swanner v. State, 58 S. W. Rep., 74; Snowberger v. State, 58 Texas Crim. Rep., 530, 126 S. W. 885.

On page 1077 of Mr. Branch's Ann. P. C., Sec. 1928, there are a great many authorities collated to the effect: Whether the danger

is real or apparent is to be determined from the defendant's stand-point. A charge on self-defense is erroneous if it fails to present the issue of self-defense from the standpoint of defendant, and requires the jury to find that the danger in fact existed. The authorities cited under these propositions are numerous, commenc-ing with Jordan v. State, 11 Texas Crim. App., 448; Lyons v. State, 71 Texas Crim. Rep., 189, 159 S. W. Rep., 1072 and Knox v. State, 74 Texas Crim. Rep., 126, 167 S. W. Rep., 729. A charge on apparent danger should directly instruct the jury that the reasonableness of the apprehension of danger should be judged from defendant's standpoint. Under this proposition Mr. Branch cites a number of authorities on page 1078 of his Ann. P. C. It will be observed that it is a fundamental proposition under our Penal Code that the danger must be viewed from the standpoint of the defendant and not from the standpoint of the jury or the op-posing side. It is from his viewpoint of it that he acted. If he believed that his life was in danger or his body of serious bodily injury, he had a right to shoot. The court's charge does not em-body the idea that it must be viewed from the defendant's stand-point as required by the law. It is said in one of these decisions: "It is the belief of the accused which furnishes the criterion. This applies as well to the question of the acts of the deceased. It is the belief of the accused that his life was in danger or his body of serious bodily injury, viewed from his standpoint, which is the basis of our law, under such circumstances. The acts and demonstrations, in view of threats by deceased, or viewed from the defendant's standpoint at the time he acted, and if defendant be-lieved those things, he was entitled to act the same as if they were true." This view of the case must, of course, be in light of the facts. The defendant cannot arbitrarily believe his life in danger. What the jury may believe about it in the light of testimony showing that the deceased was not purposing inflicting death or serious bodily in-jury is not the criterion. It is not their belief in the light of subse-quent development that forms the criterion, or the basis of appellant's right of self-defense. It is the belief of the defendant who is being tried for his life and liberty, under all the circumstances as they presented themselves to his mind at the time he acted, that should govern the jury in rendering their verdict. The jury may have believed, and the court may also have thought that appellant was guilty of manslaughter, under the charge given by the court, and had an appropriate charge been given their verdict might or might not have been as was returned into court. Appellant was awarded five years, which is three years in advance of the minimum. But in any event, appellant had the legal right to have his case passed on from his standpoint as he viewed it at the tme he acted.

A statement of the facts in reference to this matter would be of little practical value, but the testimony does show that appellant

testified that at the time he fired the deceased was pursuing or approaching him with an iron chair; that he shot to stop deceased, and that he believed at the time he so fired that if he did not shoot, deceased would kill him. He also testified when deceased jumped up he grabbed the chair in which he was sitting, "and I broke and ran back by the stove, and began shooting. I could not tell you how far he had advanced toward me with that chair when I began shooting because I was getting away from him in a hurry when he grabbed that chair. I shot to stop him because I most knew he was going to kill me. At the time I shot I certainly was scared of him. I would not ever have shot if I wasn't. I believed at the time if I did not shoot him, he would kill me. He weighed about two hundred pounds. I weight one hundred and thirty or thirty-five." The witness Reynolds, an officer, stated that when he arrived upon the scene and saw the body of deceased, deceased had a chair clutched in his right hand. The witness Edwards, as did other State's witnesses, stated deceased had cursed defendant and called him a son-of-a-bitch just prior to the shooting. There is some question as to the position deceased was occupying and what he was doing at the time the shot was fired. Appellant's testimony is stated. One of the witnesses stated deceased was sitting in a chair at the table, and defendant holloed "look out" and fired. Most of the witnesses testified there was no chair at the table, and that deceased was not sitting but was standing, the chair being a few feet away from him and in the direction of the stove. The testimony for the defendant with reference to the exclamation "look out" was to the effect that when deceased grabbed the chair he holloed "look out," and that he, defendant, did not hollo at all. It is unnecessary to go into the details of this testimony. This much of it is stated to show that the charge given by the court was defective, and the exception well taken, and there was error in refusing appellant's special requested instruction.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*