## H. C. WILSON v. THE STATE.

### No. 2705. Decided June 1, 1904.

**1.—Severance—Change of Venue Revokes.**

Where it appears that appellant agreed to a change of venue of his case, after a motion for a severance had been granted him, and his codefendant was first put upon trial, and after the trial and conviction of the latter, he could not insist upon the original severance, his codefendant having in the meantime been granted a new trial, if such postponement would have operated a continuance of his case for no other reason than that based upon such severance. Distinguishing: Force v. State, 29 Texas Crim. App., 408; Wolf v. State, 79 S. W. Rep., 520.

**2.—Charge of the Court—Provoking the Difficulty.**

See opinion for facts which did not call for a charge on provoking the difficulty.

**3.—Same—Abandoning Difficulty.**

See facts in opinion which did not raise the issue of abandoning the difficulty.

**4.—Same—Rights to Defend Until Danger Has Passed.**

See opinion for facts which called for a charge on defendant's right to follow up the difficulty until all danger had passed.

**5.—Same—Means Used by Deceased in Attack.**

Where the evidence shows that the deceased not only used in the difficulty his fist, but a plank, or board, the court in undertaking to state the means used by the deceased, should have mentioned them all and not part of them only.

**6.—Argument of Counsel.**

Counsel must confine themselves in their remarks to the record, and improper conduct of bystanders should be promptly suppressed.

Appeal from the District Court of Wood. Tried below before Hon. R. W. Simpson.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion sufficiently states the case. It appears from the record that a sudden difficulty arose between the defendant and the deceased in which the former used a knife, inflicting mortal wounds upon the deceased, from the effects of which he immediately died. The voluminous testimony is conflicting, as to who struck the first blow, the deceased or the defendant.

*M. D. Carlock, J. R. Warren, F. J. McCord,* and *Barnwell & Eberhart,* for appellant.—One of two defendants jointly indicted, on filing the proper affidavit, is entitled as a matter of right to have the other one tried first. Code Crim. Proc., art. 707; Forcey v. State, 29 Texas Crim. App., 408; Wolfe v. State, decided at this term; King v. State, 35 Texas Crim. Rep., 472; Wiley v. State, 22 Texas Crim. App., 408; Krebs v. State, 3 Texas Crim. App., 348; Tieman v. State, 28 Texas Crim. App., 144.

The law as to provoking a difficulty should not be given to the jury unless the facts raise such an issue, and such charge must be supported by the facts. There were no facts whatever to support such charge in this case, and the action of the court in presenting same to the jury

was error, and was highly prejudicial and injurious to the rights of this defendant. Pollard v. State, 73 S. W. Rep., 953; Vann v. State, 77 S. W. Rep., 813; Drake v. State, 77 S. W. Rep., 7; Casner v. State, 62 S. W. Rep., 914; McCandless v. State, 57 S. W. Rep., 672; Franklin v. State, 34 Texas Crim. Rep., 286; Airhart v. State, 40 Texas Crim. Rep., 470; Morgan v. State, 34 Texas Crim. Rep., 222; Carter v. State, 35 S. W. Rep., 378; Teel v. State, 69 S. W. Rep., 531; Bow v. State, 31 S. W. Rep., 170; Mozee v. State, 51 S. W. Rep., 250; Poer v. State, 67 S. W. Rep., 500; Cartwright v. State, 14 Texas Crim. App., 495.

The charge should be confined to the issues made by the evidence. There being no evidence that Harrell abandoned the difficulty, it was prejudicial error for the court to submit that issue to the jury. Bow v. State, 31 S. W. Rep., 170; Ross v. State, 10 Texas Crim. App., 455; Taylor v. State, 13 Texas Crim. App., 184; Hardin v. State, 13 Texas Crim. App., 192; Lynch v. State, 24 Texas Crim. App., 350; Waldon v. State, 34 Texas Crim. Rep., 92; West v. State, 2 Texas Crim. App., 460; Johnson v. State, 50 S. W. Rep., 343.

When an attorney who is making the closing argument for the prosecution in a criminal case goes outside of the record, discusses facts which were not testified to and which are injurious to the defendant, makes violent appeals to the passions of the jurors and is guilty of such conduct as to arouse the prejudice of the jurors against the defendant, and the court fails to reprimand the attorney and to require him to stay inside the record, when his attention is called thereto, and the defendant is thereby injured, such conduct when promptly excepted to constitutes reversible error. Fuller v. State, 30 Texas Crim. App., 559; Hatch v. State, 8 Texas Crim. App., 416; Eanes v. State, 10 Texas Crim. App., 421; Crawford v. State, 15 Texas Crim. App., 501; Cartwright v. State, 16 Texas Crim. App., 473; Hunnicutt v. State, 18 Texas Crim. App., 498; Wartha v. State, 55 S. W. Rep., 55.

The court erred in not charging the jury all the law applicable to the case, in this; there was proof that deceased knocked defendant and his brother down with a piece of pine plank about two feet long and two inches wide, and weighed 15½ ounces, and that such stick in the hands of a stout man (as proof showed deceased to be) was a deadly weapon; yet the court in its charge speaks of the deceased striking defendant, H. C. Wilson, and W. L. Wilson with his fist, and predicated defendant's right of self-defense upon deceased's striking with his fist, and in its charge ignores the pine plank, and does not tell the jury what defendant's rights were if he was assaulted with a deadly weapon; and this failure to so charge was prejudicial error. The court's charge is subject to further objection that it is an invasion of the province of the jury, in this: that it assumes that the deceased did not have and strike with a piece of plank described by the witnesses; or it was at least calculated to cause the jury to infer that such was the opinion of the court. Teel v. State, 69 S. W. Rep., 531; Kendall v. State, 8 Texas Crim.

App., 569; Hall v. State, 66 S. W. Rep., 783; Skaggs v. State, 31 Texas Crim. Rep., 563.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction was for manslaughter. The killing occurred in Upshur County. When the case was called for trial in that county, motion for severance was granted, and W. L. Wilson (joint defendant and brother of appellant) was placed upon trial, which resulted in his conviction. When appellant's branch of the case was called, the venue was changed to Wood County by agreement. In Wood County, when his case was called, appellant moved a postponement of the trial in order that his brother could be first tried. The court awarded W. L. Wilson a new trial in Upshur County, and the venue in his case was subsequently changed to Camp County. Appellant's contention for the postponement of his trial until his brother could be tried, is based upon the theory that where a severance has been granted it fixes the status of the parties until the final disposition of the case as made by the severance, whatever may be the subsequent developments. The statute provides that the severance may be had where the parties are sparately or jointly indicted, either as principal, accomplice, etc.; but the granting of the severance shall not of itself operate as a continuance of the case without other good and sufficient reasons for such continuance. It is evident, then, the statute contemplates that the granting of the severance shall not of itself operate a continuance, not only at the term of the court at which the severance is granted, but at any subsequent stage of the prosecution, or at any subsequent term of court. In Forcey's case, 29 Texas Crim. App., 408 it was held, where severance has been granted as to one defendant, the State could not continue the case as to the party sought to be first tried, and then force the other defendant to trial. This principle was applied in Wolf v. State, 79 S. W. Rep., 520. Under the facts of those two cases those decisions are correct. But the doctrine there enunciated has no application to this case. Here appellant agreed to the change of venue. His brother had been tried in accordance with the plan proposed by himself and brother, and had been found guilty by a verdict of the jury. Appellant's case had gone on change of venue, by agreement to Wood County, thus leaving his brother's branch of the case in Upshur County. To have granted a postponement or continuance of the case in Wood County for the testimony of W. L. Wilson would have operated a continuance of appellant's case at his suggestion, and for no other reason than that based upon the severance. This, as we understand, would be violative of the provisions of the statute, which expressly prohibits the continuance of the case based solely upon severance. In Stouard's case, 27 Texas Crim. App., 1, and in Lockoin's case, 8 Texas Ct. Rep., 204, it was held that the application for severance could not be entertained after the change of venue.

In each of those cases the granting of the application would have necessarily continued the case. This, it was held, could not be done. The order granting a severance is not irrevocable, and does not necessarily follow the cases where they are divided on change of venue. If the conditions are the same, the cases would remain the same, and the parties' rights the same. A change in the status might or even would operate to vacate the order of severance. If change of venue is had as to one of the parties, the rights under the granted severance could no longer obtain. We do not think there was error in refusing to postpone the case on this ground.

The court charged the jury with reference to provoking a difficulty. The facts do not call for such charge. The evidence is quite voluminous, and we deem it entirely unnecessary to go into a detailed statement of it. The record discloses the parties had been friends, appellant had been the family physician of deceased, and this difficulty grew out of the fact that appellant desired deceased to pay a bill due him. The testimony of appellant himself upon this branch of the case is, perhaps, the strongest, tending to show a possible provocation. As appellant started down the street to have his watch fixed, he met deceased a few steps from Barnwell's drugstore. Deceased was accompanied by several others coming up the street. "I said, 'Howdy, Bud?' He did not seem to hear me at first, as they were laughing and talking. I said, 'Bud Harrell,' and he raised his head and came to me and shook hands with me. I said, 'Now, go to dinner with me,' and he said, 'I will have to go some other time; I have just refused Bush McGrady; I am going wherever old man Tom McKissack goes to-day. Either with Jim Hambright or Charly Douphrate for dinner.' I said, 'Well, Bud, I am in a hurry, and you seem to be, and I suppose you have heard of my bad luck, losing my horse; I have just bought another and lack a little of having money enough to pay for it; thought as I had met you I would see if you could help me some to-day on your account.' He had told me in July that he would settle; he owed me $——, and I had never called on him for it. He always had an apologizing way of telling me he would settle it pretty soon. It was in July that he told me that he would settle it pretty soon. He says, 'Your money has been due for some time, but I have been in a tight,' and said everything would be all right in a few days, and said, 'If I don't pay you in a few days, I will pay you out of the cotton this fall.' I met him down the street that day and told him of my misfortune of losing my horse, and thought that as I had met him I would see if he could help me on his account. He said, 'Doc, you know there are others that are just as much responsible, and I can not get a damn thing out of them; that is why you haven't got your money.' I says, 'Well, they may be to you, but you are the only man responsible to me.' He said, 'Well, Doc,' with a sorter smile, 'I don't see, taking everything into consideration, the way you treated me in the campaign for sheriff, how you can have the face to ask me for that debt.' He said, 'You and several others

here in town ruined me, caused my defeat, and I do not intend to pay you,' and started to walk off, and I said, 'Bud, if that is your decision, I will have to see if I can't make you do it by law.' Just at that time my brother (W. L. Wilson) stepped up to my left and said, 'Mother is sick and I want some medicine for her. I came up to your office this morning, but didn't find you. I took dinner at your house, thinking you would be there, and came on down here.' I said, 'Well, I will go fix it.' I turned to go in my office and I looked up and saw Bud Harrell coming back, and I don't think he intended to punch me, but when I went to turn my face came in contact with his finger; he said, 'Whenever you get ready to make me pay this debt, pop your whip.' I said, 'Bud, I am surprised at you; I never had thought you would act so black as to refuse to pay an honest debt.' He said, 'Me, black!' I said, 'You heard my statement,' with a gesture. He struck me and knocked me clean across the sidewalk against the wall. I sunk right down with my hips against the brick wall; my hips went down with the whole force I went. My head struck the brick wall; when I received the lick it knocked me senseless. How long I remained there I do not know. I staggered to my feet." Perhaps this is sufficient of the details of the testimony as to the beginning of the difficulty, except there is a conflict in the evidence as to who struck the first lick. This evidence does not raise the question of provoking the difficulty. Pollard v. State, 73 S. W. Rep., 953; Casner v. State, 62 S. W. Rep., 914; McCandless v. State, 57 S. W. Rep., 673.

The court also charged with reference to abandonment of the difficulty by deceased. The facts did not call for this charge. The witnesses graphically describe this fight as being "fast and furious after it began," until it was finished. It was a continuous fight from its inception to its close. Some of the witnesses testified that Harrell was retreating part of the time but he was fighting all the while; in fact it seems that in moving around the parties finally returned to the point where the difficulty began, and at this point deceased fell.

We are also of opinion that the court should have charged the jury in this connection that appellant had the right to pursue or follow up this difficulty until all danger to himself had passed. Special charges were asked, which were refused, embodying this phase of the law.

The court, submitting the issue of self-defense, charged the jury: "If you find from the evidence that deceased began the difficulty by striking defendant with his fist, and if, viewing the circumstances from defendant's standpoint, it reasonably appeared to defendant that deceased was in the act of making an attack, which did not threaten death or serious bodily injury to defendant, or W. L. Wilson, if he interfered in defendant's behalf, but was an unlawful and violent attack by deceased upon defendant, or W. L. Wilson, then defendant or W. L. Wilson, in the defendant's or in his, W. L. Wilson's, behalf had the right to resist said attack, even to the death of Harrell; and if the killing of Harrell so occurred, you will acquit; but, in order to

justify the killing under these circumstances, the defendant must have resorted to all other reasonable, proper and effective means under the circumstances to prevent the injury, except to retreat, which he was not under any circumstances bound to do." This charge is criticised because it limits self-defense to the act of deceased striking appellant with his fist, whereas the testimony shows that he not only struck with his fist but with a plank or board,* which some of the witnesses estimated to weigh 15½ ounces. Upon another trial, if the court mentions the means used by deceased in committing the assault, then all the means used must be mentioned.

There is a bill of exceptions in the record prepared by the judge in regard to the remarks and acts of the State's attorneys, and the conduct of some of the bystanders, had before the jury, to wit, the lady members of the family of deceased, as well as those of defendant. Without going into a discussion of these matters, suffice it to say that upon another trial such matters should be promptly suppressed.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*