### Walter Green v. The State.

#### No. 486.    Decided March 9, 1910.

**1.—Murder—Argument of Counsel—Bill of Exceptions—Practice on Appeal.**

Where, upon appeal from a conviction of murder in the second degree, the bill of exceptions did not state that the hat referred to by counsel had never been introduced in evidence, but simply stated that he objected to the argument of State's counsel with reference to the hat because it was not introduced in evidence, there was no error because the trial judge did not certify to the truth of the exceptions or the grounds of exceptions.

**2.—Same—Charge of Court—Negligent Homicide.**

Where, upon trial for murder, the defendant took the stand and testified that the killing was accidental, and the court charged the jury that if the killing was accidental to acquit the defendant, and refused a charge on negligent homicide, there was no error.

**3.—Same—Charge of Court—Manslaughter.**

Where, upon trial for murder, the evidence showed that the defendant found deceased in company with defendant's wife and suspected the deceased to be her paramour, the court should have charged on manslaughter, notwithstanding the defendant claimed he killed deceased accidentally or in self-defense. Following Moore v. State, 15 Texas Crim. App., 1, and other cases.

**4.—Same—Charge of Court—Murder in the Second Degree.**

Where, upon trial for murder, the court charged the jury that if they found that defendant unlawfully killed the deceased, and there was no testimony that raised murder in the first degree, then defendant would be guilty of murder in the second degree, the same was error. An unlawful killing embraces not only murder in the second degree, but manslaughter and negligent homicide.

Appeal from the Criminal District Court of Galveston. Tried below before the Hon. E. R. Campbell.

Appeal from a conviction of murder in the second degree; penalty, forty-five years imprisonment in the penitentiary.

The opinion states the case.

*Elmo Johnson* and *Roy Johnson,* for appellant.—On question of the court's failure to charge on manslaughter: McLaughlin v. State, 10 Texas Crim. App., 340; Johnson v. State, 43 Texas, 612; Maria v. State, 28 Texas, 698; Williams v. State, 7 Texas Crim. App., 396; Reed v. State, 9 Texas Crim. App., 317; Green v. State, 12 Texas Crim. App., 445; King v. State, 13 Texas Crim. App., 277, and cases cited in opinion.

On question of argument of counsel: Sterling v. State, 15 Texas Crim. App., 249; Crawford v. State, 15 Texas Crim. App., 501.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, JUDGE.—This is an appeal from a conviction for murder in the second degree with a penalty of forty-five years in the penitentiary.

We find a bill of exceptions taken by the appellant to the remarks of the district attorney in his closing argument to the jury. This bill recites: "The district attorney in his closing argument held up a hat with shot holes in it, and exhibited it to the jury, and that said hat was by the jury examined during the closing argument of the State, and the district attorney told the jury that the hat was the most reliable witness in the case and was a silent witness, and that the hat destroyed the defendant's testimony and theories of a shooting in self-defense or by accident; to all of which said conduct and remarks of the district attorney the defendant excepted on the ground that the said hat had never been offered in evidence nor admitted in evidence during the trial." This bill of exceptions is not in shape before us to be considered. The judge in certifying to the bill of exceptions does not certify to the truth of the exceptions taken nor to the grounds of the exception. Had the bill of exceptions stated as a fact that same had never been introduced in evidence then the bill would have been in shape to be considered, but the bill of exceptions does not state that the hat had never been introduced in testimony, but states that he objected to it because it was not introduced in testimony. This is simply grounds of objection and not certifying to the bill of exceptions and the judge does not certify that the grounds of the objections were correct. The statement of facts discloses that the hat was introduced in testimony.

Counsel for appellant also complains that the court erred in not charging on negligent homicide. The appellant took the stand and testified that the killing was accidental; that while the deceased was advancing upon him he threw the gun up to protect himself and that the spring of the lock being out of fix, the gun went off accidentally and killed deceased. The court directed the jury that if the killing was accidental to acquit the defendant and correctly refused to charge on negligent homicide.

Complaint is also made in the motion for new trial that the court erred in not charging upon manslaughter. We are inclined to think that the court erred in not submitting the issue of manslaughter. The proof disclosed that appellant was married to one Lela Green, but that they had not been living together. The facts disclose that Lela Green had been seen in company with the deceased frequently. One witness testifying that he had seen them and met them at different places in town together, at wine rooms, beer gardens and other places. This witness further testified that at one time Green and his wife came to the place where deceased lived, together, and that the deceased and two of his brothers came up shortly afterwards, and either deceased or one of his brothers forbade appellant leaving the place with his wife, and said that they would get the other brothers together and

beat him up, and Green said, "I think you have all give me enough trouble about my wife, and I don't care to have any more trouble with you about her, and I have asked you to stay away from her." This witness further testified that the deceased and defendant's wife had been going together for about six months. Another witness by the name of York said that he had seen Lela Green and the deceased in bed together on frequent occasions, at the house where the witness and Lela Green lived. Ben Thomas testified that he conducted a restaurant or boarding-house, and that appellant would pay for Lela Green's meals, coming in on Sunday night; that appellant worked on a ship. The appellant took the stand and testified that he went to his wife's house one time and his wife was not there, and he found deceased in the bed that his wife occupied. He protested against this, and when he told deceased that he had no business at his wife's house and in her room, deceased got up and left. At another time, he says, he went on shore and receiving a message that his wife wished to see him, he went to his wife's house and knocked on the door, the deceased answered and told him that his wife was not in, and that he went on into the house and found his wife and she was sitting behind the door, and, he says, he got into a quarrel with deceased about his, appellant's, wife, and deceased threatened him at that time; that on the night of the killing he received a letter from his wife telling him to come ashore, that she wanted to see him; that he got off the boat and had a gun which was out of fix, and went up to the house where his wife was living and she was not there; that walking down the street he met his wife in company with the deceased; that he asked his wife if she was going home, and she said she had left the key to her house with her sister. Appellant said he suggested to her that he go with her to get the key; that about this time the deceased stepped up and advanced towards him; that he backed off some twenty or thirty steps, threw his gun up and intended to fire over the head of the deceased, but the lock of the gun was out of fix, and as he went to lower the gun the hammer fell, the gun exploded and killed the deceased; that he was frightened and excited and that he did not intend to kill the deceased, but intended to alarm him and run him off. Now, while it is true that the appellant testified that he did not intend to kill deceased, and that whatever he did was in self-defense, as the deceased was advancing upon him, yet all the other facts in the case raise the issue of manslaughter. The previous conduct towards the appellant's wife, seeing them in company with his wife, being threatened by deceased and his brothers, and on that night going out to hunt his wife, having received a letter that she wanted to see him and then finding her in company with the very man that had previously given him trouble, this, we think, was sufficient to create passion and excitement in the mind of any ordinary person; and if his passions at the time were aroused by seeing his wife in company with the man whom he suspected to be her paramour, and if he shot and killed at

this stage of excitement, and his mind was aroused by passion produced by this state of facts, same would be adequate cause and the court erred in not charging upon manslaughter. If the testimony raises an issue it is the duty of the court to submit that issue to the jury, and while the defendant may testify that he killed in self-defense, or killed accidentally, yet if all the testimony in the case suggests the idea that manslaughter was in the case, then it is the duty of the court to submit this issue to the jury. As stated by this court in the case of Neyland v. State, 13 Texas Crim. App., 536: "If in a murder case there be evidence, which, however, inconclusively, tends to prove facts from which the jury may deduce a finding of manslaughter, it is incumbent on the trial court to give the law of manslaughter in charge to the jury." See Moore v. State, 15 Texas Crim. App., 1; also Tow v. State, 22 Texas Crim. App., 175. For the failure of the court to give in charge to the jury the law of manslaughter the case must be reversed.

We will call attention, however, to an error of the charge of the court in submitting the law of murder in the second degree. The court directed the jury that applying the law to the facts of this case, if they found that appellant unlawfully killed the deceased, and there was no testimony that raised murder in the first degree, appellant would then be guilty of murder in the second degree. This was not a correct proposition of law. An unlawful killing will embrace not only murder in second degree, but manslaughter and negligent homicide. See Smith v. State, 57 Texas Crim. Rep., 585, 124 S. W. Rep., 679. For an approved charge on murder in second degree, see Best v. State, 58 Texas Crim. Rep., 327, decided at the present term.

For the errors indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*